UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re: | Case No. GG 20-03216-jtg |
| RESIDENTIAL MARKETING CONCEPTS, INC., | Chapter 11 – Subchapter V |
| | Hon. John T. Gregg |
| Debtor. | |

**FINAL ORDER RESOLVING OBJECTION OF KAPITUS SERVICING, INC. AND (A) AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL, (B) PROVIDING ADEQUATE PROTECTION, AND (C) GRANTING RELATED RELIEF**

This consent order (the "Order")[1] is made as of November 16, 2020 by and between Residential Marketing Concepts, Inc., Debtor and Debtor-in-Possession (the "Debtor") and Kapitus Servicing, Inc., formerly Colonial Funding Network, Inc. as servicing agent for Invision Funding, LLC d/b/a Qualified Merchant Group and Kapitus, LLC ("Kapitus," and together with the Debtor, the "Parties").

**RECITALS**

A.  On October 19, 2020 (the "Petition Date") the Debtor filed with this Court a voluntary petition for relief under chapter 11 of title 11, United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"). The Debtor has affirmatively elected to be treated as a subchapter V debtor. Pursuant to Bankruptcy Code §§ 1107 and 1108, the Debtor has retained possession of its assets and continued the operation and management of its business pursuant to 11 U.S.C. §§ 363 and 1184.

B.  The Office of the United States Trustee has appointed Scott Chernich as Subchapter

---

[1] This is a final order related to the Debtor's Use of Cash Collateral and Granting Adequate Protection.

V Trustee in this case (Doc. No.11).

    C.    This Court has jurisdiction over these proceedings and over the persons and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

    D.    The Debtor is a duly organized Michigan corporation. Debtor publishes print housing directories in three (3) metropolitan markets in the United States and a nationwide online senior housing directory and serves as a referral source for senior housing providers. Its resident agent is located at 9765 Golf Port Stanwood, MI 49346.

    E.    As of the Petition Date, the Debtor and Kapitus were parties to the following agreements:

        1.    Future Receivables Factoring Agreement (ACH) dated January 8, 2019 ("Factoring Agreement") pursuant to which Kapitus provided $20,000 for the purchase of $27,140.00 in receivables of the Debtor (the "A/Rs"). Kapitus also asserts an ownership interest in the Debtor's receivables per the Factoring Agreement. The Debtor's obligations under the Factoring Agreement were collateralized by, among other things, a Security Agreement and Guaranty by and between Debtor and Kapitus dated January 8, 2019 (jointly, the "Security Agreement"); UCC-1 Financing Statement filed on June 1, 2017 (the "UCC-1"); and the Guaranty executed by the Debtor's principal Anita Kremer-Frankovich dated January 8, 2019

        2.    Loan Agreement dated March 15, 2019 ("Loan Agreement") pursuant to which Kapitus provided the principal sum of

$105,000.00 for the repayment amount of $142,485.00. The Debtor's obligations under the Loan Agreement are collateralized by, among other things, a Security Agreement and Guaranty by and between Debtor and Kapitus dated March 15, 2019; UCC-1 Financing Statement filed on June 1, 2017; and the Guaranty executed by the Debtor's principal Anita Kremer-Frankovich dated March 15, 2019. (all of the foregoing, together with all other documentation executed or delivered in connection therewith, the "Existing Agreements").

3. Under the Existing Agreements, as of the Petition Date Kapitus claims it is owed a total of $175,611.31, which includes the contract balance, interest, ACH fees, default fees, and attorney fees to date.

F. The Debtor acknowledges and agrees that, as of the Petition Date, the Debtor was indebted to Kapitus pursuant to the Existing Agreements (the "Prepetition Debt"), but Debtor reserves the right to Challenge the amount and classification of the Prepetition Debt during the Challenge Period as defined and provided in paragraph 13 below, and as further provided in paragraph 16 below.

G. Pursuant to the Existing Agreements, the Debtor granted Kapitus a security interest in and lien upon all of the personal property assets of the Debtor as specified in the Security Agreement and UCC-1 (the "Prepetition Liens"), which includes, *inter alia*: (i) cash or cash equivalents on hand and on deposit and cash collections of the Debtor (ii) cash proceeds arising from the collection, sale, lease or other disposition, use or conversion of any of the pre-petition collateral; and (iii) accounts and accounts receivable arising from the goods sold or services

rendered by the Debtor (collectively, the "Pre-Petition Collateral").

H.  The Debtor and Kapitus acknowledge and agree that Kapitus holds a valid, perfected, enforceable, and unavoidable first priority lien on and security interest in and to the Pre-Petition Collateral.

I.  The Debtor agrees and acknowledges that, except for its possible dispute over the amount and classification of the Prepetition Debt, as of the Petition Date, there were no offsets, defenses, challenges, claims, or counterclaims of any kind or nature to any portion of the Prepetition Debt, and no portion of the Prepetition Debt is subject to avoidance, or subordination (contractual, equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

J.  The Debtor agrees and acknowledges that all of, *inter alia*, the receivables and cash proceeds generated from the operation of the Debtor's business and the Debtor's inventory constitutes income, proceeds, products, rents, and/or profits of the Pre-Petition Collateral and constitutes "cash collateral" within the meaning of Bankruptcy Code § 363(a) (collectively, the "Cash Collateral").

K.  The Debtor further agrees that Kapitus has a first priority perfected lien and security interest in the Pre-Petition Cash Collateral in accordance with Bankruptcy Code §§ 361, 363(a) and 552(b).

L.  Pursuant to Bankruptcy Code § 363(c)(3), the Debtor requires the consent of Kapitus or an Order of the Bankruptcy Court to use the Cash Collateral.

M.  The Debtor cannot meet its ordinary operating expenses or maintain and preserve its business as a going concern business without the use of the Cash Collateral.

N.  The Debtor reasonably believes that the value of Debtor's estate will be maximized

by the continuation of Debtor as a going concern business, and the use of Cash Collateral is essential to the continuation of operations.

O.  Kapitus is entitled to receive adequate protection in respect of the Debtor's use of the Pre-Petition Collateral to compensate for any decline in the value thereof resulting from (a) the use of the Cash Collateral, and (b) the use, sale, lease, or depreciation or other diminution in value of the Pre-Petition Collateral (the amount of any such diminution being referred to hereinafter as the "Adequate Protection Obligations").

P.  The terms for the Debtor's use of Cash Collateral have been negotiated in good faith and at arm's length and reflect the Debtor's exercise of prudent business judgment.

Q.  This Order settles and resolves Kapitus Servicing, Inc.'s Objection to the Interim Order Granting Debtor's Use of Cash Collateral (DN #31).

**NOW, THEREFORE,** in consideration of their covenants and mutual promises, the Parties hereby stipulate and agree, and the Court Orders as follows:

1.  <u>Incorporation of Recitals</u>. The foregoing recitals are hereby incorporated by this reference and made a part of this Order.

2.  <u>Effectiveness of Order</u>. This Order shall be immediately effective upon entry by the Bankruptcy Court and shall supersede the Interim Order entered on October 23, 2020 (DN #21).

3.  <u>Authorization to Use Cash Collateral</u>. Subject to the terms and conditions of this Order, pursuant to Bankruptcy Code § 363(c)(2), the Debtor is authorized to use the Cash Collateral during the period from the Petition Date through the Termination Date (defined below) in accordance with the budget embodied in the Court's order dated October 23, 2020 (DN #21). The Debtor shall maintain the Cash Collateral in the same level that existed prepetition and not allow Cash Collateral to diminish.

4. <u>Adequate Protection Liens</u>. As adequate protection for any diminution in value of Kapitus's interests in the Prepetition Collateral, and post-petition interest, costs and fees (Post-petition Indebtedness"), and as security for the Post-petition Indebtedness, and to the extent that the Cash Collateral is utilized by the Debtor, for the purposes of providing adequate protection within the meaning of Bankruptcy Code §§ 361 and 363, Kapitus is hereby granted (effective and perfected as of the Petition Date and without the necessity of the execution, recording or filing of mortgages, security agreements, pledge agreements, financing statements, deposit control agreements, or other documents) valid and perfected replacement security interests in, and liens on (the "Adequate Protection Liens"), the same type of post-petition assets in which Kapitus holds valid and perfected liens prior to the Petition Date and all cash or other proceeds generated post-petition by the Pre-Petition Collateral (the "Collateral") to the same extent, validity and priority as existed on the Prepetition Collateral. The Adequate Protection Liens shall constitute perfected liens on all of the Collateral as to which Kapitus held a valid and perfected lien as of the Petition Date to the same extent, validity and priority as existed on the Prepetition Collateral.  Kapitus's liens against the Debtor's Cash Collateral shall extend to any account holding such Cash Collateral, regardless of whether Kapitus has control over such account, and encumbers any Cash Collateral held in debtor-in-possession accounts required by applicable law, to the same extent, validity and priority as existed on the Prepetition Collateral.

5. <u>Extent of Adequate Protection Liens</u>. The Adequate Protection Liens shall be enforceable against the Debtor, its estate and any successors thereto, including without limitation, any trustee or other estate representative appointed in this case, or any case under chapter 7 of the Bankruptcy Code upon the conversion or dismissal of this chapter 11 case, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Case") to

the same extent, validity and priority as existed on the Prepetition Collateral. Except as provided herein, the Prepetition Liens and Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest hereafter granted in this case or any Successor Case, and shall be valid and enforceable upon the dismissal of this case or any Successor Case, to the same extent, validity and priority as existed on the Prepetition Collateral. The Adequate Protection Liens shall not be subject to Bankruptcy Code §§ 510, 549 or 550. No lien or interest avoided and preserved for the benefit of the estate pursuant to Bankruptcy Code § 551 shall be made *pari passu* with or senior to the Prepetition Liens or Adequate Protection Liens. The Adequate Protection Liens shall not extend to the proceeds of avoidance actions under chapter 5 of the Bankruptcy Code.

6. <u>Perfection of Adequate Protection Liens</u>. This Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Adequate Protection Liens, without the necessity of filing or recording any mortgage, financing statement or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action to validate or perfect (in accordance with applicable law) the Adequate Protection Liens, or to effect the priorities acknowledged and/or granted herein. The Debtor is authorized and directed to execute and deliver promptly to Kapitus any such mortgage, financing statement or other instrument or document as Kapitus may reasonably request. Kapitus may file photocopies of this Order as a financing statement or mortgage with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statement, notices of lien, mortgage or similar instrument.

7. <u>Adequate Protection Payments</u>. As further adequate protection for the Debtor's use of Cash Collateral, upon entry of this Order, on the first of each month, starting on December 1,

2020, the Debtor shall pay to Kapitus the monthly payment of $1,750.00 (one thousand seven hundred and fifty dollars) (the "Adequate Protection Payments"). These Adequate Protection Payments shall be applied to the Debtor's obligations to Kapitus in accordance with the Existing Agreements or as may be determined by Kapitus in its sole discretion. All payments by Debtor to Kapitus shall be remitted via ACH payment. The Debtor shall provide Kapitus with a voided check and written authorization allowing Kapitus to ACH debit from the account set forth on the voided check in accordance with the payment schedule set forth herein and with respect to any future adequate protection payments to which Kapitus and Debtor may agree. The Debtor has previously authorized Kapitus to ACH debit its account under the Existing Agreements and hereby confirms that agreement with respect to all future adequate protection payments being made from any and all of the Debtor's accounts.

8. <u>Modification of Automatic Stay</u>. The automatic stay under Bankruptcy Code § 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Order, including, without limitation, to: (a) permit the Debtor to grant the Adequate Protection Liens and to make the Adequate Protection Payments; (b) permit the Debtor to perform such acts as Kapitus may request in its reasonable discretion to assure the perfection and priority of the liens granted herein; and (c) authorize the Debtor to take any other actions to effectuate the terms of this Order, provided, however, any stay relief with respect to the exercise of remedies shall be in accordance with such provisions below or as otherwise ordered by the Court.

9. <u>Debtor's Obligations</u>. The Debtor shall:

    (a) Utilize Cash Collateral to pay only the Debtor's normal and regular expenses of the operation of its business in accordance with the budget embodied in the Court's order dated October 23, 2020 (DN #21).

(b) Account for all of the Debtor's expenditures in monthly operating reports in accordance with the Office of the U.S. Trustee's guidelines, which the Debtor shall timely file with the Bankruptcy Court and send to Kapitus's counsel and the Office of the United States Trustee. Nothing in this Order shall authorize the disposition of any Pre-Petition Collateral outside the ordinary course of business without the prior written consent of the Kapitus;

(c) Maintain all insurance policies required to conduct its business, including without limitation, general liability insurance, workers' compensation insurance, and disability insurance, and obtain such additional insurance in the amount as is appropriate for the business in which the Debtor is engaged, naming Kapitus as loss payee, certificate holder and as additional insured on all policies. The Debtor shall provide Kapitus with proof of all such coverage, as well as prompt notification of any change in such coverage which may hereafter occur;

(d) The Debtor shall provide Kapitus and its representatives, employees, experts or consultants reasonable access, upon reasonable notice during normal business hours to the business offices of the Debtor to enable such individuals to conduct an examination of the Collateral and for inspecting and copying the Debtor's business records; and

(e) Subject to the terms of the Debtor's principal's confirmed chapter 13 plan, all third party guaranties shall continue to guarantee and collateralize to Kapitus all post-petition use of the Cash Collateral by the Debtor, and such

guarantors hereby consent to the entry of this Order. Kapitus reserves its rights to object or take any other action against the Debtor's principal, in her individual Chapter 13 proceeding.

10. <u>Disposition of Collateral</u>. The Debtor shall maintain, safeguard, and protect and shall not sell, transfer, lease, encumber or otherwise dispose of, or allow the disposal of, any portion of the Collateral outside of the ordinary course of its business without further Order of the Court.

11. <u>Events of Default</u>. The occurrence of any of the following events, unless waived by Kapitus in writing, shall constitute an event of default, albeit as to ¶11(a), (c), (d), or (e) only, such occurrence shall not be an event of default unless such event of default is not cured after seven days' written notice to the Debtor and its counsel at their addresses listed below (collectively, the "Events of Default"):

(a) The failure by the Debtor to perform, in any material respect, any of the terms, provisions, conditions, covenants, or obligations under this Order or the Existing Agreements (except as may be modified by this Order);

(b) The entry of an order by the Court granting the Debtor's landlord or any other party (i.e. not limited to the Parties hereto) relief from or modifying the automatic stay under Bankruptcy Code § 362(a);

(c) Dismissal of this chapter 11 case or conversion of this chapter 11 case to a chapter 7 case, or appointment of an examiner, or other responsible person;

(d) A material default by the Debtor in reporting financial or operational information as and when required under this Order, the Existing Agreements, or the Local Bankruptcy Rules; and/or

      (e)      The Debtor's failure to timely pay all necessary use and occupancy expenses during the post-petition period.

Any written notice under this Section shall be delivered via First Class Mail to the Debtor and via Electronic Mail to Debtor's Counsel at the following addresses:

For Debtor:

Anita Kremer-Frankovich
1000 Woodkirk Lane
Mathews, NC 28104

For Debtor's Counsel

Lieberman & Cohen, PLLC
c/o Michael D. Lieberman
31313 Northwestern Highway
Suite 200
Farmington Hills, MI 48334
mike@lgcpllc.com

    12.    <u>Rights and Remedies upon Termination Date</u>. Unless otherwise agreed to in writing by Kapitus, after the occurrence of an Event of Default (in the event of the occurrence of an event set forth in ¶¶ 9, or 11(b) herein) or an uncured Event of Default (in the event of the occurrence of an event set forth in ¶11(a), (c), (d), or (e) herein) (the earlier of such date specified in ¶12(i) and ¶12(ii) herein shall be the "Termination Date"): (a) Debtor's right to use Cash Collateral shall be immediately terminated, (b) the automatic stay as to Kapitus's Collateral shall be immediately vacated, and (c) Kapitus may immediately exercise any and all rights and remedies permitted by applicable law to enforce its liens and security interests in and to the Collateral to the same extent, validity and priority as existed on the Prepetition Collateral. The above rights and remedies will take effect as follows: (i) in the event of an Event of Default set forth in ¶¶ 9, or 11(b) herein, upon submission of an affidavit of default and a proposed order terminating the use of Cash Collateral, and (ii) in the event of an Event of Default set forth in ¶11(a), (c), (d), or (e) herein, by

settling an order granting such relief, together with an affidavit of default, on five business days' notice upon Debtor's counsel, the Office of the United States Trustee, and Kapitus's counsel, and any person or entity filing a notice of appearance in the Debtor's case, during which time the Debtor may counter-settle an order permitting further use of Cash Collateral or the continuance of the automatic stay.  Notwithstanding any terms to the contrary contained herein, the Debtor shall be entitled to cure a default under ¶11(a), (c), (d), or (e), only two times in the aggregate and upon a third default, Kapitus may exercise all available rights and remedies.

13. <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>. The rights of any creditor, party in interest or committee, whether formal or informal, to dispute or challenge the validity, perfection, extent, amount and priority of Kapitus's claims and liens and/or the right to dispute Kapitus's right to any Adequate Protection Payments authorized under this Order (collectively, a "Challenge") are expressly preserved for sixty (60) days from the date that the Court has entered this Order (the "Challenge Period"). Upon the expiration of the Challenge Period (the "Challenge Period Deadline"), without the filing of a Challenge: (a) any and all such Challenges by any party (including, without limitation, any chapter 11 trustee, and/or any examiner or other estate representative appointed in this chapter 11 case, and any chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case), shall be deemed to be forever waived, released and barred, and (b) all of the Debtor's stipulations, acknowledgements, waivers, releases, affirmations and other stipulations to the priority, extent, and validity as to Kapitus's claims, liens, and interests shall be of full force and effect and forever binding upon Kapitus, the Debtor, the Debtor's bankruptcy estate and all creditors, interest holders, and other parties in interest in this chapter 11 case and any subsequent chapter 7 case.

14. <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Order does not

create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary, and the guarantors of the Prepetition Debt hereby acknowledge and agree that they are not entitled to the benefit of the Debtor's automatic stay under 11 U.S.C. §362 and that neither they nor the Debtor shall seek to extend the protections of the automatic stay to them.

15. <u>No Liability to Third Parties</u>. In not objecting to the Debtor's use of Cash Collateral under the terms set forth herein or in taking any other actions related to this Order, Kapitus (i) shall have no liability to any third party except to the extent permitted by law; and (ii) shall not owe any fiduciary duty to the Debtor, its creditors, its estate, or to each other. Kapitus's relationship with the Debtor shall not constitute or be deemed to constitute a joint venture or partnership with the Debtor.

16. <u>Rights Preserved</u>. Notwithstanding all terms to the contrary stated herein, this Order expressly reserves, and shall not be construed in any way as a waiver or relinquishment of, any rights or remedies, expressly or implicitly, that Kapitus may have at law and in equity, including but not limited to: (i) under the Existing Documents; (ii) Kapitus's right to seek any other or supplemental relief in respect of the Debtor, including the right to seek additional adequate protection or restriction on Cash Collateral (without prejudice to any other person's right to object to or otherwise oppose such additional adequate protection or restriction on Cash Collateral); (iii) Kapitus's right to object to impermissible use of Cash Collateral; (iv) Kapitus's agreement, consent, or acquiescence to the terms of any plan by virtue of any term or provision of this order; (v) Kapitus's right to assert any other rights, remedies, or defenses available to Kapitus to respond to any motion, application, proposal, or other action, all such rights, remedies, defenses, and opportunities to respond being specifically reserved by Kapitus; (vi) the rights of Kapitus with respect to the Debtor's sale of the A/Rs; (vii) Kapitus's agreement, consent, or acquiescence to the

terms of any plan of reorganization or treatment of its claim by virtue of any term or provision of this order; (viii) any of the rights or remedies of Kapitus under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, (a) the right to request modification of the automatic stay of Bankruptcy Code § 362, (b) the right to request dismissal or conversion of this chapter 11 case; (c) all rights and remedies under the Uniform Commercial Code; and (d) all rights and remedies under the Federal Arbitration Act, 9 U.S.C. §1 *et seq.* and any other applicable law. Notwithstanding its acknowledgment of the Prepetition Debt in Recital F above, the Debtor reserves the right to object to the payment of default interest, and any portion of Kapitus's attorney's fees and expenses that the Debtor, in good faith, believes are not reasonable provided, however, nothing herein shall be construed to impair Kapitus's rights to seek the payment of default interest and the payment of their attorney's fees and expenses from the Debtor. Nothing herein contained shall prejudice the right of Kapitus to seek modification, extension, or termination of this order.

17. Notwithstanding any terms to the contrary stated herein, entry of this Order shall not in any way constitute: (a) a finding of complete adequate protection of the interests of Kapitus or the lack thereof; (b) a preclusion or waiver to assert any other rights, remedies, or defenses available to Kapitus to respond to any motion, application, proposal, or other action, all such rights, remedies, defenses, and opportunities to respond being specifically reserved by Kapitus; or (c) a preclusion, waiver, or modification of any rights or remedies that Kapitus has under applicable law.

18. <u>No Admission</u>: Neither this Order, nor Kapitus's consent to the entry of this Order shall constitute an admission by Kapitus that the protection to Kapitus is adequate. Further, neither entry of this Order, nor consent to this Order shall constitute an agreement by Kapitus to the

treatment of Kapitus's claim under any plan.

19.     Additional Documents: The Debtor shall promptly provide to Kapitus such additional or other financial information as Kapitus may from time to time reasonably request.

20.     Binding Effect of Order. Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Order shall become valid and binding upon the Debtor, Kapitus, all other creditors of the Debtor, any committee appointed in this chapter 11 case, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in this chapter 11 case, any chapter 7 case, or upon dismissal of this chapter 11 case or any chapter 7 case. In the event of any inconsistency between the provisions of this Order and any other order relating to the Debtor's use of cash collateral in this case, the provisions of this Order shall govern and control.

21.     Modification, Amendment or Vacatur of Order. In the event any or all of the provisions of this Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, such modification, amendment or vacatur shall not affect the validity, perfection, priority, allowance, enforceability or non-availability of any advances, payments or use of Cash Collateral whether previously or hereunder, or lien, claim or priority authorized or created hereby. Any liens or claims granted to Kapitus hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Order shall be governed in all respects by the original provisions of this Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

22.     Survival. The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order that may be entered: (a) converting this chapter 11 case to a case under chapter 7 of the Bankruptcy Code; (b) dismissing this chapter 11 case; (c) the appointment of an

examiner; or (d) pursuant to which this Court abstains from hearing this chapter 11 case. The terms and provisions of this Order, including the claims, liens, security interests and other protections granted pursuant to this Order, notwithstanding the entry of any such order, shall continue and shall maintain the same extent, validity and priority as provided by this Order.

23. <u>Retention of Jurisdiction</u>. The Court has and will retain jurisdiction to enforce this Order according to its terms.

Respectfully submitted,

**KELLER & ALMASSIAN, PLC**

Dated: November 16, 2020  /s/ Nicholas S. Laue
Nicholas S. Laue (P79260)
Attorneys for Kapitus
230 East Fulton Street
Grand Rapids, MI 49503
(616) 364-2100
nlaue@kalawgr.com

**LIEBERMAN GIES & COHEN PLLC**

Dated: November 16, 2020  /s/ Michael D. Lieberman (with permission)
Michael D. Lieberman (P38529)
Attorneys for Debtor
31313 Northwestern Highway, Suite 200
Farmington Hills, MI 48334
(248) 539-5500
mike@lgcpllc.com

**FOSTER, SWIFT COLLINS & SMITH, PC**

Dated: November 16, 2020

/s/ Scott Chernich  (with permission)
Scott Chernich (P48893)
Subchapter V Trustee
313 S. Washington Square
Lansing, MI 48933
(517) 371-8133
schernich@fosterswift.com

**ANDREW BYERLY BIRGE**
United States Attorney

Dated: November 16, 2020

/s/ Michael L. Shiparski (with permission)
MICHAEL L. SHIPARSKI (P33064)
Assistant United States Attorney
P.O. Box 208
Grand Rapids, MI 49501
(616) 456-2404
mike.shiparski@usdoj.gov

**OFFICE OF THE UNITED STATES TRUSTEE**
Approved for entry as to form

Dated: November 16, 2020

/s/ Dean Rietberg (with permission)
Dean Rietberg
Trial Attorney for the U.S. Trustee
125 Ottawa Ave NW, Suite 200R
Grand Rapids, MI 49503
(616) 456-2002